Peter S. Partee
Scott H. Bernstein
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
(212) 309-1000

-and-

J.R. Smith (admission *pro hac vice* pending)
Jason W. Harbour (admission *pro hac vice* pending)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
(804) 788-8200

*Attorneys for Friedman, Billings, Ramsey Group, Inc.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC. et al., | § § § § § | Case No. 08-13555 (JMP) (Jointly Administered) |
| Debtors. | § | |
| SECURITIES INVESTOR PROTECTION CORPORATION | § § § | |
| Plaintiff, | § § | |
| v. | § § | Adversary No. 08-01420 (JMP) |
| LEHMAN BROTHERS, INC. | § § | |
| Defendant. | § | |

| | |
|---|---|
| FRIEDMAN, BILLINGS, RAMSEY GROUP, INC. §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>SECURITIES INVESTOR PROTECTION §<br>CORPORATION, JAMES W. GIDDENS, §<br>TRUSTEE FOR THE SIPA LIQUIDATION §<br>OF LEHMAN BROTHERS, INC., and §<br>LEHMAN BROTHERS, INC. §<br>§<br>Defendants. § | Adversary No. 08- _____ |

**VERIFIED COMPLAINT FOR A TEMPORARY
RESTRAINING ORDER, DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES**

Friedman, Billings, Ramsey Group, Inc. ("FBR" or "Plaintiff"), by its undersigned attorneys, for its verified complaint against the Securities Investor Protection Corporation ("SIPC"), James W. Giddens in his capacity as Trustee for the SIPA Liquidation of Lehman Brothers, Inc. (the "Trustee") and Lehman Brothers, Inc. ("LBI"; together with SIPC and the Trustee, the "Defendants"), hereby alleges as follows:

**Preliminary Statement**

This is an action for a temporary restraining order, declaratory judgment, injunctive relief and damages, including a demand for a constructive trust[1], based on the parties' rights and obligations under that certain Master Repurchase Agreement by and among FBR, LBI and Lehman Commercial Paper, Inc., dated as of August 15, 2007 (the "Repurchase Agreement"). On September 19, 2008, an Act of Insolvency (as defined in the Repurchase Agreement), an Event of Default (as defined in the Repurchase Agreement), and the Repurchase Date (as defined in the Repurchase Agreement) occurred under the terms of the Repurchase Agreement. Subsequently, FBR tendered, and continues to tender, the Repurchase Price (as defined in the

2

Repurchase Agreement) to the Defendants. As a result, the Defendants are obligated to comply with the terms of the Repurchase Agreement and applicable law and return to FBR a Fannie Mae mortgage-backed security, in the original principal amount of $250,000,000, with a CUSIP number of 31397LC31 and a pool reference to FNR 2008-53 (the "Security"), that is owned by FBR. Despite repeated requests to the Defendants, and no legal or contractual basis for delay, they have refused to deliver the Security.

Given the current SIPA insolvency proceeding and the liquidation of LBI, absent immediate injunctive relief, FBR will suffer irreparable harm unless this Court enters an order (a) declaring that (i) an Act of Insolvency, an Event of Default and the Repurchase Date occurred on September 19, 2008, (ii) FBR tendered the Repurchase Price and continues to tender the Repurchase Price, but the Defendants refuse to accept the tender, (iii) the Security is property of FBR, FBR is entitled to immediate access to and possession of the Security and the Defendants are obligated to deliver the Security to FBR, (iv) FBR's actions are not stayed by (A) the automatic stay provision of Section 362 of the Bankruptcy Code, (B) the stay available to debtors under SIPA pursuant to 15 U.S.C. § 78eee(b)(2), or (C) the District Court Order; and (b) directing that (i) the Defendants immediately deliver the Security to FBR and (ii) the Defendants be enjoined from transferring the Security to any third party other than FBR and be enjoined from transferring LBI's rights in, to and under the Repurchase Agreement.

## Jurisdiction and Venue

1.  This Court has subject matter jurisdiction over this adversary proceeding pursuant to 15 U.S.C. §§78eee(b)(2) and (b)(4).

2.  Venue of this adversary proceeding in this district is proper pursuant to 15 U.S.C. §§78eee(a)(3), (b)(2) and (b)(4).

---

[1] As set forth below, to the extent necessary, this Complaint also contains a request for relief from stay.

3. This adversary proceeding has been commenced in accordance with Rule 65 of the Federal Rules of Civil Procedure and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure made applicable pursuant to 15 U.S.C. § 78fff(b).

**The Parties**

4. Plaintiff is a Virginia corporation with its principal place of business at 1001 Nineteenth Street North, Arlington, Virginia 22209.

5. SIPC is a nonprofit membership corporation established by 15 U.S.C. § 78ccc with its principal place of business at 805 Fifteenth Street, N.W., Washington, DC 20005-2207.

6. The Trustee is the Trustee for the SIPA Liquidation of LBI and has a business address of Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, N.Y. 10004-1482.

7. LBI was a broker-dealer registered with the United States Securities Exchange Commission and the Commodity Futures Trading Commission, a member of the Financial Industry Regulatory Authority and a member of SIPC, with its principal place of business at 745 Seventh Avenue, New York, NY 10019.

**Background Facts**

8. FBR, LBI, and Lehman Commercial Paper, Inc. are parties to the Repurchase Agreement. A true and correct copy of the Repurchase Agreement is attached hereto as <u>Exhibit A</u>.[2]

9. Pursuant to the Repurchase Agreement, FBR, as a repo seller, sold the Security to LBI, as a repo purchaser, evidenced by a confirmation (the "<u>Confirmation</u>") as required by the Repurchase Agreement. A true and correct copy of the Confirmation is attached hereto as <u>Exhibit B</u>. Contemporaneous with such sale and pursuant to the Repurchase Agreement, LBI agreed to resell the Security, and FBR agreed to repurchase, on the Repurchase Date at the

---

[2] Capitalized terms used but not separately defined herein have the meanings ascribed to such terms in the Repurchase Agreement. The Repurchase Agreement is a contract governed by New York law.

4

Repurchase Price. Pursuant to the Confirmation, the Repurchase Date is a date that is six months after the Purchase Date, unless, as is the case here, the Repurchase Date is accelerated as a result of an Event of Default

10.  On September 19, 2008, an "Act of Insolvency" of LBI occurred under the Repurchase Agreement.

11.  Specifically, on September 19, 2008, SIPC filed a complaint against LBI pursuant to the Securities Investor Protection Act, 15 U.S.C.§ 78aaa et seq. ("SIPA"), in the United States District Court, Southern District of New York (the "District Court"). In response to the complaint, the District Court entered its order, dated September 19, 2008 (the "District Court Order"), that, among other things, (i) ordered the appointment of the Trustee and the law firm of Hughes Hubbard & Reed LLP as counsel to the Trustee; (ii) ordered the Trustee to liquidate LBI with all of the duties and powers of a trustee under SIPA; and (iii) transferred jurisdiction over the SIPA liquidation of LBI to this Court.

12.  The District Court Order constituted an Act of Insolvency under Section 2(a) of the Repurchase Agreement.

13.  Upon the occurrence of the Act of Insolvency, under Section 11(a) of the Repurchase Agreement an Event of Default was deemed automatically to have occurred under the Repurchase Agreement on September 19, 2008 without any additional act by FBR or LBI.

14.  Also upon the occurrence of the Act of Insolvency, under Sections 2(q) and (r) and 11(a) and (f) of the Repurchase Agreement the Repurchase Date also was deemed automatically to have occurred on September 19, 2008, fixing the calculation of the Repurchase Price as of this date.

15.  On September 22, 2008, FBR sent a letter to LBI (the "First Demand Letter") in which FBR:

---

Repurchase Agreement, § 16.

5

(a) identified the occurrence of the Event of Default and the Repurchase Date;

(b) declared that it was tendering the Repurchase Price on September 23, 2008; and

(c) demanded that LBI deliver the Security to FBR the Security.

A true and correct copy of the First Demand Letter is attached hereto as <u>Exhibit C</u>.

16. On September 23, 2008, FBR, through its counsel, again advised the Trustee of the occurrence of an Event of Default under the Repurchase Agreement, and demanded that the Trustee deliver the Security to FBR pursuant to the Repurchase Agreement.

17. On September 24, 2008, FBR sent a second letter (the "<u>Second Demand Letter</u>") to LBI, this time also including SIPC and the Trustee, in which FBR (i) identified the occurrence of the Event of Default and the Repurchase Date, (ii) tendered the Repurchase Price; and (ii) demanded the return of the Security. A true and correct copy of the Second Demand Letter is attached hereto as <u>Exhibit D</u>.

18. The Second Demand Letter stated the Repurchase Price based upon a September 24, 2008 settlement date. Pursuant to Section 11(a) and (f) of the Repurchase Agreement, the Repurchase Price is calculated as of the Repurchase Date, which date was fixed as September 19, 2008, due to the Act of Insolvency on that date. Accordingly, the Repurchase Price for the Mortgage Loans is $227,282,685.85, representing principal in the amount of $226,863,000 and interest in the amount of $419,685.85. To effect a consensual return of the Security, FBR tenrdered to the Defendants $76,290.67 *more* than the actual Repurchase Price required under the Repurchase Agreement. Nevertheless, the Defendants rejected this premium, necessitating the filing of the Complaint.

19. In the Second Demand Letter, FBR also noted that its demand for delivery of the Securities and related actions are not stayed by the automatic stay provision of Section 362 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") or the District Court Order. To the

contrary, FBR's exercise of remedies pursuant to the Repurchase Agreement expressly *is permitted* pursuant to various provisions of the Bankruptcy Code, including, but not limited to, Sections 541, 101(47) and 559 of the Bankruptcy Code, SIPA, pursuant to 15 U.S.C. § 78eee(b)(2)(C), and the District Court Order, pursuant Sections VIII.B. and E.

20. FBR continues to tender the Repurchase Price of $227,282,685.85 for the Security.

21. Section 11(c) of the Repurchase Agreement unequivocally provides that upon the occurrence of an Event of Default and FBR's tender of the Repurchase Price, (i) all right, title and interest in and entitlement to the Security transferred automatically to FBR; and further (ii) LBI shall deliver the Security to FBR.

22. Notwithstanding the clarity of such obligation, the Defendants have ignored and otherwise refused FBR's repeated demands to deliver the Security. The Defendants also have failed to provide FBR with instructions for forwarding the Repurchase Price. Instead, the Trustee's counsel responded that FBR's "account would be handled in the regular course of the SIPA liquidation" (the "Trustee Correspondence"). A true and correct copy of the Trustee Correspondence is attached hereto as Exhibit E.

23. While the Trustee, through its counsel, has stated that FBR's rights under the Repurchase Agreement would be handled in the regular course of the SIPA liquidation, there is absolutely no legal basis for the Trustee to maintain that position or otherwise to refuse to deliver the Security. Based on the Trustee Correspondence, the Trustee may be confusing treatment of the Security under the Repurchase Agreement with its obligations to administer customer accounts maintained by LBI as broker/dealer. Here, however, the Security is not maintained by LBI in a broker/dealer-type account. LBI entered into the Repurchase Agreement in its corporate capacity and the Defendants have an absolute obligation to return the Security,

7

unfettered by application of the Bankruptcy Code, SIPA or the District Court Order.

24.     FBR has entered into a trade pursuant to which it sold the Security to a third party (the "Trade").  The settlement date for this sale was September 24, 2008.  Solely as a result of the Defendants refusal to transfer the Security to FBR on the Repurchase Date, FBR was unable to complete the settlement of the Security.  As such, the third-party sale is in "fail" status.  As a consequence of the failed trade, FBR is losing access to the net capital resulting from the sale (i.e., the difference between the Repurchase Price and the sale price to the third party) plus income on that capital for each day of delay.  Further, if FBR is unable to timely complete the transfer, the third-party purchaser could terminate the Trade and require FBR to repurchase the Security at an amount significantly higher than the price at which FBR sold the Security to the third-party.

25.     Under Sections 11(g) and (h) of the repurchase Agreement, FBR is entitled to a claim against LBI for these damages.  Recovery of a claim by FBR for such damages, however, is certain to be less than 100% and, given LBI's liquidation, is more likely to be pennies on the dollar.  Thus, FBR will suffer irreparable harm unless this Court enters an order directing that the Defendants immediately deliver the Security, to which FBR is the current legal owner, to FBR.

26.     FBR is entitled to the relief it seeks pursuant to the terms of the Repurchase Agreement and applicable law.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment that the an Act of Insolvency,**
**an Event of Default and the Repurchase Date**
**Occurred on September 19, 2008)**

27.     FBR repeats and realleges paragraphs 1 – 26 as if fully set forth herein.

28.     Section 2(a) of the Repurchase Agreement provides that the entry of the District Court Order constitutes an Act of Insolvency of LBI.

29.     Section 11(a) of the Repurchase Agreement provides that an Event of Default

8

occurs upon an Act of Insolvency.

30. Section 11(a) of the Repurchase Agreement provides that the Repurchase Date occurs upon an Act of Insolvency.

31. As a result, on September 19, 2008, an Act of Insolvency, an Event of Default and the Repurchase Date occurred.

32. FBR has tendered and continues to tender the Repurchase Price for the Security.

33. By refusing to comply with FBR's demand to deliver the Security, the Defendants created an actual, justiciable controversy between FBR and the Defendants, which may be heard and determined by this Court pursuant to 28 U.S.C. § 2201. Therefore, FBR requests a declaration from this Court that on September 19, 2008 (a) an Act of Insolvency of LBI occurred; (b) an Event of Default occurred; and (c) the Repurchase Date occurred.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment Regarding the Tender of the Repurchase Price)

34. FBR repeats and realleges paragraphs 1 - 33 as if fully set forth herein.

35. Section 11(f) of the Repurchase Agreement provides that the Repurchase Price is calculated based on the Repurchase Date.

36. The Repurchase Date was September 19, 2008.

37. The Repurchase Price, which is calculated as of September 19, 2008, is $227,282,685.85.

38. FBR tendered the Repurchase Price on September 23, 2008, and continues to tender the Repurchase Price.

39. The Defendants have refused and continue to refuse to accept the tender.

40. By refusing to comply with FBR's demand to deliver the Security, the Defendants have created an actual, justiciable controversy between FBR and the Defendants, which may be

heard and determined by this Court pursuant to 28 U.S.C. § 2201. Therefore, FBR requests a declaration from this Court that FBR tendered the Repurchase Price on September 23, 2008, and continues to tender the Repurchase Price, but the Defendants refuse to accept the tender.

**THIRD CAUSE OF ACTION**
**(Declaratory Judgment that the Security Is Property of FBR and that Defendants are Obligated to Deliver the Security to Calyon)**

41. FBR repeats and realleges paragraphs 1 - 40 as if fully set forth herein.

42. Section 11(c) of the Repurchase Agreement provides that following an Event of Default and a tender of the Repurchase Price by FBR (i) all right, title and interest in and entitlement to the Security transferred to FBR and (ii) LBI must deliver the Security to FBR.

43. As a result of the occurrence of the Event of Default and FBR's tender of the Repurchase Price, FBR owns all right, title and interest in and entitlement to the Security, and the Defendants have no right, title or interest in or entitlement to the Security.

44. As a result of the occurrence of the Event of Default and FBR's tender of the Repurchase Price, FBR is entitled to immediate access to and possession of the Security and the Defendants are obligated to deliver the Security to FBR.

45. The Defendants have refused and continue to refuse to deliver the Security to FBR.

46. By refusing to comply with FBR's demand that Defendants deliver the Security to FBR, the Defendants have created an actual, justiciable controversy between FBR and the Defendants, which may be heard and determined by this Court pursuant to 28 U.S.C. § 2201. Therefore, FBR requests a declaration from this Court that the Security is property of FBR, that FBR is entitled to immediate access to and possession of the Security and that the Defendants are obligated to deliver the Security to FBR.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment that No Stay Applies)

47. FBR repeats and realleges paragraphs 1 - 46 as if fully set forth herein.

48. The Repurchase Agreement is a "repurchase agreement" within the meaning of Section 101(47) of the Bankruptcy Code because the Repurchase Agreement (i) provides for the transfer of mortgage related securities or interests in mortgage loans by FBR; (ii) against the transfer of funds by LBI; (iii) with a simultaneous agreement by LBI to transfer the mortgage related securities or interests in mortgage loans to FBR; (iv) at a date certain not later than one year after such transfer or on demand; (v) against the transfer of funds from FBR.

49. Therefore, pursuant to Section 559, made applicable under SIPA proceedings pursuant to 15 U.S.C. § 78fff(b), as well as other provisions of the Bankruptcy Code, FBR is permitted to take all steps necessary to exercise its contractual rights to liquidate, terminate or accelerate the Repurchase Agreement, in spite of the initiation of the SIPA action.

50. Similar safe harbor provisions protect FBR's rights under SIPA. Section 78eee(b)(2)(C)(i) provides that neither the filing of the SIPA action nor any order from the court operates as a stay of FBR's rights under the Repurchase Agreement.

51. Although Section 78eee(b)(2)(C)(ii) sets forth an exception to the SIPA safe harbor and authorizes a court to stay the disposition or foreclosure of assets pledged or sold by a debtor under a repurchase agreement, there is no exception to the SIPA safe harbor for repurchase agreements in which the debtor is a repo buyer.

52. Thus, the SIPA safe harbor protects FBR's rights and neither the filing of the SIPA insolvency action nor any order from the court operates to stay FBR's rights because LBI is the repo buyer under the Repurchase Agreement.

53. The District Court Order also does not stay the exercise of FBR's rights under the Repurchase Agreement. Instead, the District Court Order tracts the exception to the safe harbor

11

in 15 U.S.C. § 78eee(b)(2)(C)(ii) and stays for 21 days parties from foreclosing on, or disposing of, securities collateral pledged by LBI, securities sold by LBI under a repurchase agreement, or securities lend under a securities lending agreement, without first receiving the written consent of SIPC and the Trustee.

54. LBI has neither pledged, sold nor lent securities to FBR. Rather, FBR sold the Security to LBI pursuant to the Repurchase Agreement, which Security FBR demands returned pursuant to the Repurchase Agreement. LBI is the buyer, not the seller, under the Repurchase Agreement.

55. By refusing to comply with FBR's demand that Defendants deliver the Security to FBR, the Defendants have created an actual, justiciable controversy between FBR and the Defendants, which may be heard and determined by this Court pursuant to 28 U.S.C. § 2201. Therefore, FBR requests a declaration that FBR's actions are not stayed by (i) the automatic stay provision of Section 362 of the Bankruptcy Code, (ii) the stay available to debtors under SIPA pursuant to 15 U.S.C. § 78eee(b)(2), or (iii) the District Court Order.

**FIFTH CAUSE OF ACTION**
**(Request for Immediate Injunctive Relief)**

56. FBR repeats and realleges the allegations set forth in paragraphs 1 - 54 as if fully set forth herein.

57. For the reasons set forth herein, Plaintiff seeks immediate injunctive relief (i) directing the Defendants to deliver the Securities, and any related proceeds currently in the possession of, or at any time in the future in the possession of Defendants, to FBR immediately and (ii) enjoining the Defendants from transferring the Security to any third party other than FBR and from transferring LBI's rights in, to and under the Repurchase Agreement.

58. The Security is not property of the Defendants and therefore may not be used by the Defendants.

59. The failure and refusal of Defendants to deliver the Security to FBR is causing immediate irreparable damage because, by virtue of the Defendants' SIPA insolvency proceeding, FBR's claim against the Defendants for such harm likely, if not certainly, will not be paid in full. Because of the LBI' precarious financial situation and the SIPA insolvency proceeding, each passing day increases FBR's risk that it will not be able to recover these damages.

60. FBR needs the Security so that it can satisfy its obligations with respect to the Trade, minimize currently accruing damages and avoid substantial damages in respect to the Trade.

61. Therefore, FBR requests that this Court enter a temporary restraining order and a preliminary injunction (i) directing the Defendants to deliver the Security, and any related proceeds currently in the possession of, or at any time in the future in the possession of Defendants, to FBR immediately and (ii) enjoining the Defendants from transferring the Security to any third party other than FBR or from transferring LBI's rights in, to and under the Repurchase Agreement.

### SIXTH CAUSE OF ACTION
### (Relief From Stay)

62. FBR repeats and realleges the allegations set forth in paragraphs 1 – 61 as if fully set forth herein.

63. Pursuant to, among other things, 11 U.S.C. §559, the relief sought in this Complaint is not subject to the automatic stay as provided in 11 U.S.C. § 362.

64. In addition, because FBR is the repo seller under the Repurchase Agreement, the relief sought herein is not subject to the stays provided in SIPA or the District Court Order.

65. However, out of an abundance of caution, FBR requests relief from any such stay.

66. As of the date hereof, Defendants were in possession of property belonging to

FBR, to-wit, the Security.

67. Defendants have refused and continue to refuse to deliver the Security to FBR.

68. FBR seeks relief from any applicable stay to the extent necessary to pursue this Complaint and to obtain possession of the Security.

**SEVENTH CAUSE OF ACTION**
**(Breach of Contract:**
**Failure to Deliver Security)**

69. FBR repeats and realleges the allegations set forth in paragraphs 1 - 70 as if fully set forth herein.

70. Defendants have breached and are continuing to breach their obligations by failing and refusing to deliver the Security to FBR.

71. FBR has been damaged as a result of the breach by the Defendants.

72. The Defendants' breach of the Repurchase Agreement is a direct and proximate cause of FBR's damages.

73. Defendants have no contractual or legal right to retain the Security, or any proceeds therefrom or thereon, in their possession, custody or control.

74. FBR will continue to suffer irreparable harm if Defendants do promptly deliver the Security to FBR.

75. By reason of the foregoing, FBR is entitled to specific performance and judgment against Defendants directing Defendants to deliver the Security, and any related proceeds currently in the possession of, or at any time in the future in the possession of Defendants, to FBR immediately.

76. In addition, by reason of the foregoing, FBR is entitled to an award of monetary damages in an amount to be determined at trial.

# EIGHTH CAUSE OF ACTION
## (Conversion)

77. FBR repeats and realleges the allegations of paragraphs 1 - 78 as if fully set forth herein.

78. The Security, and any related proceeds currently in the possession of, or at any time in the future in the possession of Defendants, does not constitute property of any of the Defendants. Instead, the Defendants hold the Security, and any related proceeds currently in the possession of, or at any time in the future in the possession of Defendants, in trust for the benefit of FBR.

79. The Defendants' refusal to comply with FBR's repeated demands to deliver the Security, and any related proceeds currently in the possession of, or at any time in the future in the possession of Defendants, to FBR constitutes unlawful dominion by the Defendants over FBR's property.

80. Despite FBR's repeated demands to the Defendants to deliver the Security, and any related proceeds currently in the possession of, or at any time in the future in the possession of Defendants, to FBR, the Defendants continue to interfere with the superior property rights of the FBR in and to the Security.

81. Therefore, FBR is entitled to judgment against the Defendants directing the Defendants immediately to deliver the Security, and any related proceeds currently in the possession of, or at any time in the future in the possession of Defendants, to FBR.

82. In addition, by reason of the foregoing, Plaintiff is entitled to an award of monetary damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Constructive Trust)

83. FBR repeats and realleges paragraphs 1 - 84 as if fully set forth herein.

84. The Defendants do not own the Security, or any related proceeds currently in the possession of, or at any time in the future in the possession of Defendants, and instead hold such property in trust for FBR.

85. The Defendants have violated their fiduciary duties to FBR by refusing to comply with FBR's repeated demands to deliver the Security, and any related proceeds currently in the possession of, or at any time in the future in the possession of Defendants, to FBR and by improperly retaining the Security, and any related proceeds currently in the possession of, or at any time in the future in the possession of Defendants.

86. As a consequence of the Defendants' actions, the Court should impose a constructive trust in favor of FBR on the Security, and any related proceeds currently in the possession of, or at any time in the future in the possession of Defendants,.

WHEREFORE, FBR prays for judgment as follows:

(a) for declaratory relief that (i) an Act of Insolvency, an Event of Default and the Repurchase Date occurred on September 19, 2008; (ii) FBR tendered the Repurchase Price on September 23, 2008 and continues to tender the Repurchase Price, but the Defendants refuse to accept the tender; (iii) the Security is property of FBR, FBR is entitled to immediate access to and possession of the Security and the Defendants are obligated to deliver the Security to FBR; and (iv) FBR's actions are not stayed by (A) the automatic stay provision of Section 362 of the Bankruptcy Code, (B) the stay available to debtors under SIPA pursuant to 15 U.S.C. § 78eee(b)(2), or (C) the District Court Order;

(b) for immediate injunctive relief (i) directing the Defendants to deliver the Securities to FBR immediately and (ii) enjoining the Defendants from transferring the Security

to any third party other than FBR and from transferring LBI's rights in, to and under the Repurchase Agreement;

(c) for monetary damages resulting from Defendants' breaches of the Repurchase Agreement in an amount to be determined at trial;

(d) for such relief from any applicable stay as the Court deems just and proper under the circumstances;

(e) for the imposition of a constructive trust upon the Security retained by the Defendants; and

(f) for such other and further relief, including interest, costs, disbursements and attorneys' fees, as the Court may deem just and proper.

Dated: September 26, 2008

HUNTON & WILLIAMS LLP

*/s/ Scott H. Bernstein*_____
Peter S. Partee
Scott H. Bernstein
200 Park Avenue, 53rd Floor
New York, New York 100166-0136
Telephone: (212) 309-1000
Telecopier: (212) 309-1100

and-

J.R. Smith (admission *pro hac vice* pending)
Jason W. Harbour (admission *pro hac vice* pending)
Riverfront Plaza, East Tower
951 E. Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Telecopier: (804) 788-8218

*Counsel to Friedman, Billings, Ramsey Group, Inc.*

# VERIFICATION OF COMPLAINT

I, J. Rock Tonkel, Jr., pursuant to 28 U.S.C. § 1746, hereby declare that I have read the foregoing *Verified Complaint for a Temporary Restraining Order, Declaratory Judgment, Injunctive Relief and Damages* and declare that the factual allegations contained therein are true and correct, based on the best of my knowledge, information and belief, and on information I received from others on reasonable inquiry.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 26, 2008.

_____
President, Chief Operating Officer
Friedman, Billings, Ramsey Group, Inc.